LIES, APPELLANT, *v.* OHIO VETERINARY MEDICAL BOARD, APPELLEE.

(No. C-800421—Decided July 1, 1981.)

*Mr. Henry E. Sheldon, II,* for appellant.

*Mr. William J. Brown,* attorney general, and *Mr. B. Douglas Anderson,* for appellee.

BLACK, J. The principal issues in this appeal concern the scope of review required by law in respect of charges of gross incompetence brought against a veterinarian when the examiner's report of the evidentiary hearing and his recommendations are reviewed and considered first by the board that appointed him under R.C. 119.09 and later by a court of common pleas pursuant to appeal under R.C. 119.12.

Other issues concern the clarity or vagueness of R.C. 4741.22(R) which allows suspension for gross incompetence, the completeness of the administrative record as certified to the court when an amendment of the administrative board's minutes is required, the legality of allowing those minutes to be amended, and the need for expert testimony about standards of practice when a board of veterinary medicine must rule on charges of gross incompetence.

### General

Appellant, John S. Lies, D.V.M. (Dr. Lies), seeks reversal of a suspension of his license to practice veterinary medicine in Ohio, a penalty that has been stayed pending this appeal. He was charged administratively with gross incompetence in violation of R.C. 4741.22(R) and with permitting an unlicensed person to engage in veterinary practice in violation of R.C. 4741.22(Q). A full evidentiary hearing was held before an administrative examiner appointed by the Ohio Veterinary Medical Board (board) pursuant to R.C. 119.09. The board imposed a one-year suspension with six months of that penalty suspended. Dr. Lies appealed under R.C. 119.12 to the court of common pleas, which affirmed the board's order.

Dr. Lies asserts five errors. We find merit in the second assignment of error which claims that the court below erred in failing to examine and consider the entire record before ruling on the appeal. Because we remand this case for further proceedings, we pass only on those assignments pertinent to such proceedings and decline to rule on all others. *Parton* v. *Weilnau* (1959), 169 Ohio St. 145 [8 O.O.2d 134].

### Procedural History

Dr. Lies was charged with thirty-four instances of gross incompetence and one instance of permitting an unlicensed assistant to practice veterinary medicine. On his request, an administrative hearing examiner was appointed and a hearing extending over six days was held on twenty-seven charges of gross incompetence (seven charges being ignored) and on the single charge of allowing unlicensed practice. The board was represented by an assistant attorney general and Dr. Lies chose to represent himself. The board did not present any expert testimony about standards of veterinary practice or gross incompetence. The transcript of the proceedings before the hearing examiner contains 1461 typewritten pages; thirty-eight exhibits were admitted into evidence. The hearing examiner filed with the board a fifty-four page report including his findings of fact, conclusions of law and recommendations (report). Dr. Lies filed a written rebuttal statement with the board (rebuttal).

At the board meeting on August 3,

1977, Dr. Lies was present when his matter came up for discussion and action. The board members were asked whether they had read the report and the rebuttal, and one member was instructed that he could not enter into the discussion or deliberation in the matter. Dr. Lies was permitted to join in the discussion which extended over almost two hours. At the conclusion of the discussion, the board suspended Dr. Lies's license for one year with six months of that time suspended.

Dr. Lies thereupon appealed to the court of common pleas, and the board filed its record of proceedings as required under R.C. 119.12. The board was later permitted to amend the "transcript" by filing minutes of a board meeting held on August 23, 1978 in which the minutes of August 31, 1977, were corrected for an oversight in reporting what transpired before Dr. Lies's case was discussed. The seventh and eighth paragraphs of the 1977 minutes as originally written read:

"The President requested each Board Member to indicate if he had read the Hearing Officer's report and the rebuttal.

"Dr. Patrick Breen was instructed that he in no manner could enter into the discussion or deliberation involving this complaint."

As corrected in 1978, the same paragraphs read:

"The President requested each Board Member to indicate if he had read the Hearing Officer's report and the rebuttal. All Board Members other than Dr. Breen indicated that he had read the Hearing Officer's report and rebuttal.

"Dr. Patrick Breen was instructed that he in no manner could enter into the discussion or deliberation involving this complaint."

It is undisputed that the purpose of the correction was to record the responses to the president's question whether the members had read the report and the rebuttal. We note that the added sentence in paragraph seven explains why Dr. Patrick Breen was told he could not discuss or vote on the complaint against Dr. Lies. The minutes do not disclose whether any board member had read, examined or considered the transcript of proceedings before the hearing examiner.

The court of common pleas affirmed the suspension, finding that the board's order was supported by reliable, probative and substantial evidence and was in accordance with law. Appellant and appellee agree in their briefs and in oral argument that the court expressly conceded that in rendering its judgment, it did not read or review the transcript of proceedings before the hearing examiner but relied instead on his report (and presumably the rebuttal).

Judicial Review Under R.C. 119.12

Ohio's Administrative Procedure Act provides in R.C. 119.12 that when an administrative agency's order (adjudication) suspending a veterinary license is appealed, the agency shall prepare and certify "a complete record of the proceedings in the case." In the absence of any additional, newly discovered evidence (and there was none in the instant case),[1] the court is directed to conduct its hearing of the appeal on the basis of that record. The statute goes on to state:

"The court may affirm the order of the agency complained of in the appeal if it finds, *upon consideration of the entire record* and such additional evidence as the court has admitted, that the order is sup-

---

[1] R.C. 119.12 allows a common pleas court to admit evidence in addition to the certified record when satisfied that the additional evidence is newly discovered and could not with reasonable diligence have been ascertained ·before the administrative hearing. When such additional evidence is introduced, the common pleas court must exercise its usual function as a factfinder, in addition to its function as a reviewing court. The case *sub judice* is not complicated by any such duality of functions by the common pleas court.

ported by *reliable, probative, and substantial evidence* and is in accordance with law. In the absence of such a finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by *reliable, probative, and substantial evidence* and is in accordance with law." (Emphasis added.)

These provisions direct the court of common pleas to function as an appellate court. The review of the administrative record is neither a trial *de novo* nor an appeal on questions of law only, but a hybrid review in which the court "must appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof." *Andrews* v. *Bd. of Liquor Control* (1955), 164 Ohio St. 275, 280 [58 O.O. 51].

We hold that as a reviewing court, the court below had a mandatory duty to examine and consider the transcript of the hearing and that it could not fulfill that duty by examining and considering only the hearing examiner's report. The plain language of the statute directs the reviewing court to look at the *entire* record, not just summaries thereof, and to determine whether the order is "supported by reliable, probative, and substantial evidence." We believe that the court cannot do that without examining and considering the record in its entirety including the transcript of the evidence. The Supreme Court has stated that the common pleas court "must read and consider all the evidence offered by both sides" in order to carry out the mandate of the statute. Although this statement may be considered *obiter dictum,* we believe it is an accurate statement of the law. *Andrews* v. *Bd. of Liquor Control, supra.*[2]

All appellate courts are under a similar duty when the issues presented for review relate to the manifest weight of the evidence. As this court said in *Oskamp* v. *Oskamp* (1925), 20 Ohio App. 349, 351, motion to certify overruled, 24 Ohio Law Rep. 353, the question of whether a verdict is sustained by sufficient evidence requires consideration of the entire record and all the facts and circumstances presented by the record. For purposes of evaluating a court's performance of the appellate function, we perceive no difference between a case in which the reviewing court must decide whether the conclusion below was against the manifest weight of the evidence and one in which the court must decide whether the conclusion below was supported by credible, probative, and substantial evidence. See *Universal Camera Corp.* v. *National Labor Relations Bd.* (1951), 340 U.S. 474, 487-489, as to a court's duty in reviewing administrative final orders under the federal Administrative Procedure Act, Sections 551 *et seq.,* Title 5, U.S. Code, which has language similar to R.C. 119.12. It has been said that "responsible men would not exercise their judgment on only that part of the evidence that looks in one direction; the rationality or substantiality of a conclusion can only be evaluated in the light of the whole fact situation or so much of it as appears." Jaffe, Administrative Procedure Re-Examined: The Benjamin Report, 56 Harv. L. Rev. 705, 733 (1943).

Our conclusion about the scope of the court's review is further bolstered by this consideration: administrative hearings, procedures and review of inferior orders are of a different nature than routine judicial matters. Administrative decisions are made by an organization in which the

---

[2] See, for example, the Supreme Court's detailed review of the evidence from an administrative hearing that concerned charges of medical malpractice in *Arlen* v. *State* (1980), 61 Ohio St. 2d 168 [15 O.O.3d 190], and in considering a similar record about dental malpractice in *Unger* v. *Ohio State Dental Board* (1943), 142 Ohio St. 67 [26 O.O. 256].

various parts of the decisional process may be delegated under a system of relatively informal communication. They are institutional decisions, not decisions personal to the final authority. Procedures are tolerated that would not be permitted in court proceedings.[3] The appeal under R.C. 119.12 generates the first judicial review of these procedures when they allegedly impair a citizen's rights and privileges. We believe this calls for a thorough judicial review. The scrutiny afforded by our judicial system must have a quality that lifts our judicial conclusions, so far as humanly possible, above all charges of bias, predetermined results, and hurried, half-considered answers to important questions. It is the first review by one branch of government of the actions of another branch, the underlying goal of which is to make sure that the complainant has had all the protections guaranteed by our Constitution and laws.

We are not persuaded by the board's counterargument that this court should now do what the lower court failed to do; that we should review the entire record to determine whether the suspension order is supported by reliable, probative, and substantial evidence; and that therefore Dr. Lies was not prejudiced by the failure of the lower court to conduct a full review because this court will proceed to make a final determination. This counterargument is unavailing for two reasons. First, Dr. Lies was in fact prejudiced by the malfunction of the first judicial review, since he was entitled by statutory mandate to a full performance of judicial duty at the entry level. His complaint must be sustained at that level if it has merit, and his victory there might well answer his complaints *in toto*. Second, if the legislative intent had been to permit an aggrieved party to by-pass the common pleas court or to permit the common pleas court to transfer administrative appeals to the intermediate appellate level, it could have done so. It did not. It placed a burden on the common pleas court that cannot be evaded.

The court erred in failing to examine and consider the transcript of proceedings before the hearing examiner. The second assignment of error has merit.

### Due Process During Administrative Procedures

In the first assignment, Dr. Lies claims that his due process rights were violated because R.C. 4741.22(R) is unconstitutionally vague, uncertain and indefinite, and because the board members failed to consider the hearing transcript.

### Vagueness of R.C. 4741.22(R)

Our conclusion is that R.C. 4741.22(R) is not unconstitutionally vague, uncertain or indefinite simply because it permits suspension of a veterinarian on grounds that he is guilty of "gross incompetence." That phrase is no different from similar phrases normally used in regulating professions and occupations, such as the phrase "misconduct or nonprofessional conduct" applicable to attorneys under R.C. 4705.02.[4] We believe that when an

---

[3] For instance, the hearing examiner in the instant case did not strictly follow the rules of evidence. As shall be discussed later in this opinion, expert testimony on standards of practice is not required for an administrative ruling on gross incompetence of a veterinarian, and an administrative board is not mandated to read the entire transcript cover to cover, but may rely on the examiner's summary.

[4] Other examples are: "gross incompetency," or "incompetency," of auctioneers R.C. 4707.15(I), of professional engineers R.C. 4733.20(A)(2), of psychologists R.C. 4732.17(I), of real estate brokers R.C. 4735.18(F), of hearing aid dealers R.C. 4747.12(M), of nursing home administrators R.C. 4751.10(A); "unfit" of steam boiler operators R.C. 4739.13 and of nursing home administrators R.C. 4751.10(A); "grossly unprofessional conduct," or "unprofessional conduct," of barbers R.C. 4709.16(E), of embalmers R.C. 4717.08(D), of optometrists R.C. 4725.11.

applicant may practice a profession only after he or she qualifies and is licensed under a set of standards promulgated and administrated by a board given responsibility for governance of the profession, phrases that in other contexts might be vague, indefinite or uncertain of meaning acquire a certainty that is, prima facie, sufficient to advise the practitioner about what conduct is forbidden. We believe the phrase then attains that degree of certitude which will eliminate arbitrary and erratic application among practitioners, and will protect the profession from unfettered discretion in the hands of the governing board. *In Re Walker's License* (1941), 210 Minn. 337, 300 N.W. 800; Annotation, 50 A.L.R. 2d 870 ("Validity of statutes or regulations relating to practice of veterinary medicine"). See, also, *Papachristou* v. *City of Jacksonville* (1972), 405 U.S. 156; *Brinkley* v. *Hassig* (C.A. 10, 1936), 83 F.2d 351; Annotation, 28 A.L.R. 3d 487 ("Professional incompetency as ground for disciplinary measure against physician or dentist").

Administrative Review of Record

Dr. Lies asserts that his due process rights were violated by the failure of the board members to "consider the evidence of the hearing" before rendering their decision. This assertion does not withstand close scrutiny. The board's minutes state that all but one member had read the report and the rebuttal, although the minutes do not affirmatively demonstrate that any one or more members had in fact read the underlying testimony. The one member who was not prepared was not allowed to participate in the discussion and disposition of the charges against Dr. Lies. The minutes further disclose that Dr. Lies was allowed to state his position and his arguments and that he participated in the ensuing discussion, which lasted almost two hours. From this we infer that the merits of the charges and the evidence in support of them were in fact considered by the board members who voted on the matter.

Dr. Lies does not point to any specific deficiency in the information before the board or any other failure by the board to give full consideration to what developed at the hearing. His single claim is that the members of the board did not read the transcript of the hearing. We do not believe that fact, standing by itself, is fatal. We find no reported case in Ohio directly on point.[5]

R.C. 119.09 states, in pertinent part, that the board's final order "based on * * * [the examiner's] report, recommendation, transcript of testimony and evidence, or objections of the parties * * * shall have the same effect as if such hearing had been conducted by the * * * [board]."[6] The statute does not create a

---

[5] We believe that *State* v. *Carroll* (Sixth App. Dist. 1977), 54 Ohio App. 2d 160 [8 O.O.3d 285], is clearly distinguishable. The charges being considered there were against a medical doctor and the hearing officer was a member of the governing administrative board. He did not file a written report of any nature, and the board had only his oral report, but he participated in the review, and the affirmative vote on, his own findings and order of indefinite suspension. While the deliberative session of the board was also attended by the assistant attorney general who prosecuted the case, the doctor was not present or represented at the meeting. The reversal of the administrative suspension order was based on denial of a fair hearing (due process) and on failure to base the board's conclusion on reliable, probative and substantial evidence (R.C. 119.12).

[6] The pertinent parts of R.C. 119.09 are:

"The recommendation of the referee or examiner may be approved, modified, or disapproved by the agency, and the order of the agency based on such report, recommendation, transcript of testimony and evidence, or objections of the parties, and additional testimony and evidence shall have the same effect as if such hearing had been conducted by the agency."

mandatory duty to read the transcript of testimony and evidence; it merely states that the board's decision must be "based on" the same. Our inquiry, then, is directed at the meaning of that phrase.

Various jurisdictions have concluded that the scope of administrative review is not subject to microscopic judicial review. The federal rule arises from the basic concept that the administrative agencies are "collaborative instrumentalities of justice and the appropriate independence of each [branch of government] should be respected by the other." *United States* v. *Morgan* (1941), 313 U.S. 409, 422. In *Morgan*, the Supreme Court held that the administrative officer who made the final decision in the executive branch (the Secretary of Agriculture) should not have been subjected to an examination by deposition or at trial about the process he used within his department and the documents he relied on in order to reach his conclusion. In New York, a board member who did not read a transcript of a prior hearing was not disqualified from participating in the decision, in the absence of any specific evidence that he failed to make an informed, independent decision. *Taub* v. *Pirnie* (1957), 3 N.Y. 2d 188, 144 N.E.2d 3. In California, panel members of an administrative board (the Industrial Accident Commission) that made the final adjudication were not obligated to read the entire record including the transcript; they must consider and appraise the evidence and could do that from a referee's summary of the testimony, in the absence of any specific, material defect in the summary. *Allied Compensation Insurance Co.* v. *Indus. Accident Comm.* (1962), 57 Cal. 2d 115, 118, 17 Cal. Rptr. 817, 819-20, 367 P.2d 409, 411-12. In Wisconsin, the Industrial Commission may rely on synopses of the evidence prepared by the examiner, when the synopses are not attacked as inadequate, false or otherwise deficient. *State* v. *Indus. Comm.* (1956), 272 Wis. 409, 76 N.W.2d 362. See, generally, Annotation, 18 A.L.R. 2d 593, at 620, Section 8.

Despite authority to the contrary,[7] we conclude that these cases state the correct rule: the institutional (organizational) decision made by an administrative board may properly be based on written findings of fact prepared by a hearing examiner appointed under R.C. 119.09, so long as the findings of fact constitute a basis for making informed, deliberate, and independent conclusions about the issues, and the board members need not read the entire transcript of testimony in the absence of any affirmative demonstration that the findings of fact are in any way defective.

We find no violation of Dr. Lies's due process rights in the administrative procedures employed in this case. The first assignment of error has no merit.

## Amendment to Administrative Record after Certification to the Court

In his third assignment of error, Dr. Lies claims that the record of the board's proceedings as originally certified to the court of common pleas was not complete because it failed to contain those corrections in the board's minutes that reflected the answers to the question about which board members had read the report and the rebuttal. Failure to certify a complete record within thirty days after receipt by the board of Dr. Lies's notice of appeal would have entitled him, on motion, to a judicial finding in his favor.

In his fifth assignment of error, he claims that the court erred when it considered a record that contained the amendment to the board's minutes.

We believe that these two assignments raise one underlying issue: whether the common pleas court erred when it allowed the board to amend its minutes as

---

[7] *Walker* v. *De Concini* (1959), 86 Ariz. 143, 341 P.2d 933; *Big Top, Inc.* v. *Hoffman* (1965), 156 Colo. 362, 399 P.2d 249.

originally certified. Again, we find no reported Ohio case on point.[8]

We hold that the record of administrative proceedings was complete in the form in which it was certified because it contained all of the documents and all of the transcripts of proceedings that constituted the record of the case at the administrative level. It was complete but not correct. The common pleas court's admission of the amended 1977 minutes simply corrected the record as originally certified.

We find no error in correcting the instant record to the extent allowed in this case. It has long been the rule in appellate practice that errors in a trial court's record may be corrected. R.C. 2321.14; App. R. 9(E). In the absence of any statute or rule to the contrary, the same concepts should apply by analogy when a common pleas court is sitting as an appellate court to review administrative adjudications. We cannot conceive of any prejudice that might arise from our ruling in this case because the amendment *sub judice* was limited in extent and in effect. On the contrary, our fundamental principles of fairness require that judicial determinations be made on the rock of truth, so far as humanly possible, provided the corrections are sought in good faith and are obviously helpful for judicial review. The third and fifth assignments of error have no merit.

### Need for Expert Testimony before Board of Veterinary Medicine

In his fourth assignment of error, Dr. Lies contends that the affirmance of his suspension was erroneous because the suspension was not supported by reliable, probative and substantial evidence and was not in accordance with law, and he presents three issues in support of this contention. We will pass on the first issue only because our ruling on that issue is relevant to the further proceedings by the common pleas court for which we remand this case. We decline to rule on the other two issues (proximate cause between the doctor's action or inaction and the unfortunate results thereof, and failure of proof of the doctor's responsibility for the unlicensed practice of veterinary medicine by an employee), because these are central issues that must be addressed on remand to the common pleas court.

The first issue presented under the fourth assignment is whether the board's suspension was erroneous because the board produced no expert testimony that Dr. Lies was guilty of gross incompetence. We find no merit in this contention because we believe this issue was decided, in substance, in *Arlen* v. *State* (1980), 61 Ohio St. 2d 168 [15 O.O.3d 190]; therein, the Supreme Court held that expert testimony about reasonable standards of practice is not mandatory in medical disciplinary proceedings before the State Medical Board. We can perceive no reason why that principle, which arises from the concepts generally applicable to administrative practices and procedures discussed above, should not also apply to veterinarians. A rule of law which is proper for medical doctors should also be proper for veterinary doctors.

To the extent that the fourth assignment of error claims that the board was not justified in proceeding to a conclusion without the benefit of expert testimony

---

[8] We ignore those reported cases in which courts have decided that the failure to file any record whatsoever within the time allowed by statute (now twenty days) will cause judgment to be entered for the appellant. We note that the complete omission of material from an administrative record as certified for judicial review does not require the reviewing court to enter judgment for him when the omission is not prejudicial to appellant. *Lorms* v. *Dept. of Commerce* (1976), 48 Ohio St. 2d 153 [2 O.O.3d 236].

about reasonable standards of veterinary practice, we hold it has no merit.

Having found merit in appellant's second assignment of error, we reverse the judgment below and remand this case to the court of common pleas for further proceedings.

*Judgment reversed and case remanded.*

KEEFE and DOAN, JJ., concur.